Case Number 11-0761, Consolidated List 11-0833, American Country Insurance, Chicago Carriage Cab Corporation, Los Alamos. David. David, the lawyer has already denied you the case. Please approach the bench and introduce yourself. Good morning, Your Honor. I'm Richard Egan on behalf of Fenton Appalachian Steve Cox. I'm Richard Liddell on behalf of the Appalachian, Appalachian Mooney Williams. I'm John Pecori for American Country Insurance Company. You guys worked out an arrangement with the time here? We don't need your spelling. We were seeking that for discussion, but we obviously, with this many parties, I plan on keeping it very brief. Okay. I completely agree that we'll split our time. Okay. Mr. Bruski and I discussed it, and between ourselves, we suggest that 15 minutes for American Country, five minutes for the cab companies. Okay. All right, let's proceed. Thank you. Thank you. May it please the Court, Counsel Richard Egan again on behalf of Steve Cox, a defendant in Appalachian. This is an appeal for an entry of summary judgment in the Chancery Division of the Circuit Court of Cook County. The plaintiff, Appalee, American Country Insurance, who I refer to as ACI, prevailed on a motion for summary judgment, essentially arguing that it did not owe a duty to indemnify a $275,000 judgment entered in favor of my client, Steve Cox. ACI essentially argued that it owed no duty to indemnify because the injuries sustained by Steve Cox did not resolve from the ownership, maintenance, or use of the taxi cab. We appeal and argue that the lower court erred by misapplying the standard for a summary judgment motion and failed to look at some very important and relevant facts and find genuine issues of relevant fact. The lower court also erred by not considering, as facts and evidence, the jury's February 23, 2010, verdict in the Law Division in favor of Steve Cox and against the defendant, Appalaine Akamumi Williams, on negligent entrustment, which was count two. The lower court also erred by not finding coverage and ordering ACI to indemnify. As the court noticed, defendant Appalaine Williams' appeal is consolidated with this appeal also. Steve Cox's injuries did arise or result out of the use of an insurance. What do we know about whether Mr. Williams had any role in the injuries sustained by Mr. Cox? We know nothing of whether he had any role. Although he testified on the standard oath that he did not have a role in the injuries sustained. So I don't understand, maybe it's ACI's position that if he had no role, why... Are they attributing the willful and wanted conduct by those who did assail Mr. Cox to Mr. Williams and therefore get out of indemnity? It would seem that way. It would seem that they're making that step. And the key point is with Mr. Williams, he was found liable under count two negligent entrustment. And negligent entrustment, as the court is well aware, is when the defendant gives another express or implied permission to use or possess a dangerous instrumentality which a defendant knew or should have known would likely be used in a manner involving an unreasonable risk of harm to others. Let me ask you this. What's missing in this summary judgment motion that, from your understanding of their case, that would have knocked your case out? Had there been a finding of fact by the jury in that other case that the cab driver was involved? Of course, he never became a defendant because they couldn't track him down. Then would that kill your case? I believe so, because it would be a finding of essentially battery, but it could be a finding of negligence also. And this is pure speculation. With sufficient safeguards, maybe a special interrogatory, some kind of conduct he was involved in. Exactly. So it would be very fact specific, but also it would be how the jury determines it. They could find, A, that it was a battery and he was found liable under battery, which I don't believe would be covered under the policy. I think the exclusions are pretty well stated. But is that really what the trial judge did here? Because it was basically one irrefuted. Mr. Cox said that the cab driver was involved in the assault that he received. And there was nothing contrary to that assertion. And I thought the trial judge says, sounds like willful and wanton to me. And once you have that willful and wanton finding, and as you just admitted, that would be enough to knock you out. Knock your case out. But of course there was not a willful and wanton finding by the jury. No, but the jury, we don't have to rely on that. We have to rely on what the trial judge had before it on the summary judgment motion. And I think if the case was solely against that taxi cab driver and we were trying to obtain a duty to identifying coverage from ACI, I think those would be the logical arguments that were made. Obviously that's not the issue here. The issue here is negligent entrustment against Mr. Williams for giving his keys. Well, let's say Mr. Williams is definitely covered by negligent entrustment. But wouldn't the willful and wanton conduct by the person to whom he is entrusted the cab vitiate the duty on the part of American Standard? And the answer is no. And the reason is because negligent entrustment, it's the synchronic. You cannot have negligent entrustment on the use of a vehicle. And how it's used could be outside of what is covered. But I thought willful and wanton conduct is always excluded under a policy. And if that was the sole case, but I think it's the vehicle was used in a manner. This is a taxi cab. And my client got into a taxi cab because he expected to be driven home safely and properly as we all are. The issue was the cab was used in a way to get him into the cab, then negligently operated during various aspects, turning down a wrong street, perhaps parking where you're not supposed to park, things of that nature. But those sort of things don't happen out of pure negligence. I mean, nobody turns down the wrong way street and nobody parks in the alley out of negligence. It seems planned. And it could be, but another perception could be that it's not planned and that there would be instances where negligent operation of a vehicle could put you as a passenger in a very dangerous situation where you could be harmed or injured. What of the cab driver's refusal to acknowledge Mr. Cox's words to him that, hey, you're turning down the wrong way street and what are you doing here parking in this alley? And he just ignores all that. But prior to ignoring all that, he makes a phone call and speaks in a foreign language. And shortly thereafter, somebody jumps in the cab. And I think one way to infer that is just as your Honor states, but another way is that perhaps he didn't hear him because he was on the phone speaking, which is a violation of the law in the city of Chicago. You're not supposed to be on your phone when you're operating a vehicle. So there's many numerous factors here. Let me ask you this. All these questions that are being asked here, doesn't that illustrate that there's a question of fact here? I think it does. And that's why the summary judgment was improperly entered. So let me ask you this. How would this case get resolved? There would have to be a finding of a duty to indemnify. By whom? Not by this Court. Well, the Court certainly could make that finding. Based on what? Well, I think based on the facts as presented in the review of all the exhibits and information. Let's say we don't do that. How does it get resolved? Well, it would be essentially as we asked that it be reversed and remanded back. And then we would have a determination. What kind of determination? I would suspect there would be a hearing on whether or not there would be a duty to indemnify. Isn't that what already occurred? No, I think there was a summary judgment. On the duty to indemnify? On the duty to indemnify, and the Court indicated there was no genuine issue of material fact. So you're talking about an evidentiary hearing as opposed to a summary hearing? Exactly, Your Honor. But it wouldn't be a jury trial? Certainly not. I don't think there's a right to a jury trial based on the filing here and the chance re-division. So it may be that the Court has an evidentiary hearing and trial, a bench trial would be, and the decision is the same from the Court essentially. We may be back here arguing that issue of whether there's a duty to indemnify and revisiting this all over again. Although I do think the Court is in a position to make that determination in their ruling. And are you saying that what we're really missing here is the role of the cab driver's role in the beatings that Mr. Cox sustained? It's another element of fact that could be considered, but I don't think it's that important. The issue is negligent entrustment. It's negligence. And this is covered under the policy. There's no reason to remand for that because that's been established, hasn't it? I don't believe so. I think it has been established. But that doesn't automatically lead to a duty to indemnify, does it? I don't believe so, but I believe in these facts and in this situation, it does. I believe it does. I believe this taxi cab was used. And if you look at the policy language, it is whether the injuries arose out of the use of a vehicle. Use is a very expansive word. So I think the cab was used. Are there components also that were willful and wanton, as Your Honor says? Well, yes. But does that completely exclude the duty to indemnify when they are entitled to indemnify if the injuries arose out of the use? Did they arise out of the use? The answer is yes. Now, some of the injuries were sustained by willful and wanton conduct. That is true. And I know that I don't want to commingle the tort and the contract principles, but the principle is approximate cause. But for the use of the taxi cab, this does not occur to my client. And I think that's very clear. And I think the coverage would apply based on the policy and the facts that are specific in this case. This cab was being used in a manner consistent with its customary use to a point. At which point it would stop being used for that purpose is very fact specific. This is not a personal vehicle, contrary to all the cases cited by ACI. I admit this is a very unique fact pattern. I think ambiguity exists in the policy. There is no exclusion for negligent entrustment. There is no definition for use resulting from. And I think these factors were misconstrued by the court. Now, does, would the child judge have to make a finding that Mr. Kingsley was an insured? No. No, because the insurer is Mr. Williams, I believe. But what did Mr. Williams have to do with anything? He is the one who was negligent. But every time you negligently entrust does not result in a beating and robbery of the passenger in the cab. I agree, Your Honor. So there is that gap. How do you bridge that gap? I think you look at the facts and make a determination based on the policy and determine did the injuries arise out of the use. If the answer is yes, the question is over, I think. And no different than giving your keys to an intoxicated individual, they go through a stop sign. Well, going through a stop sign caused it, but giving the keys is a negligent act. So as far as foreseeability goes, the facts in this case clearly indicate that Mr. Williams knew or should have known that his friend was up to no good. Let's take your example that you just gave us. A person is given the car keys that shouldn't have received him, but he purposely drives on the sidewalk to strike someone. Because he sees somebody he knows, he has a grudge against this person, drives the car on the sidewalk to strike. Is there coverage? It would depend in that case. The entrustor, what did he know? So negligent entrustment by itself doesn't necessarily lead to indemnification or coverage. It turns on the facts. Of course it does. And that's why I was going back to whether that fact of whether or not the cab driver was involved in the assault really decides this case. Again, I do not think it does in this case. I'm sure you don't want it to decide this case. Well, even if it did, we can argue that it still has a role of whether or not the coverage applies, because it is the use of the cab. The injuries arise out of the use, and it still gets back to the point here. But the use of the cab, it was the use of the car on the sidewalk trying to strike someone. It's still a use of a car, but certainly there is no coverage, because use of a cab and use of a car doesn't end the analysis. It only begins it. It does, and if the entrustor in that case gave the keys to an individual and said, I'm going to go run that person over, there would be coverage, whether or not that act was intentional or not. We've proven that in the lower court. We've proven it. But we don't have Mr. Kingsley telling Mr. Williams that he was going to arrange for his passenger to be assaulted and robbed. We don't. We know he had money troubles. We know he was not properly qualified to operate. We know he worked at night. He worked under a phony identification. Doesn't take too much of a stretch to determine. Of his, of course. I'm going to yield the reign of my time to Mr. Eckert. If you may, please support counsel. I represent Mr. Williams, and he was found guilty of negligent entrustment of his auto. In the case of State Farm versus McGlawn, it says that negligent entrustment of an automobile arises out of the use of a car. American country isn't taking the position that willful and wanton is why there's no coverage. They're saying it's because it did not arise out of use of an auto. The case of State Farm versus McGlawn says it does. How did they get out of use of an auto? The three cases that they rely on. But in this case, using the facts of this, how did they say it's not use of an auto in this case? Because they say when criminal, they cite those, you mean at the declaratory? Right now in their brief, I'm not sure I understand. I think they're saying that because when criminal conduct occurs in the drivers involved, then it doesn't really result from the use of the auto. It results from the criminal conduct. I guess that's the position they're taking. They cite three cases, none of which is a negligent entrustment case. One involves a negligent parenting case. None of those are negligent entrustment of an automobile. And so as to Mr. Williams, this arises out of the use of an automobile. We don't know whether the driver was involved from the get go or not. And is that what you're saying, that we need to remand it to the circuit court to make that determination? Because if they can't decide, then maybe there is indemnity. But if they can't decide that Mr. Kingsley was involved, but if they decide that Mr. Kingsley planned it and acted willfully and wantonly, and setting everything up, then is there coverage? There's coverage. There's coverage as to my guy, Mr. Williams. I knew that was your answer, but I'm waiting for the why. He was found guilty of having entrusted a vehicle to somebody who did not have a license. The injury has to be caused by that incompetence. But it has to be within the confines of non-willful and wanton conduct. As we talked about, somebody being negligently entrusted a car, deciding, well, I'm going to get back at this individual who's on the sidewalk, drives the car on the sidewalk, and tries to strike this individual. Then the entrustor is not going to be hit for negligent entrustment. Why? Because at the time he gave the keys, the guy was not competent. And then he decides to go off on a lark and commit a criminal act. It's still negligent. He did entrust negligent. Well, anyhow, what I wanted to say is we don't know exactly what Mr. King'sly, we do know that Kingsley pulls over, goes down the wrong way, pulls up to a stop. A masked man gets in the back. Kingsley doesn't start beating up, he doesn't start participating. It's when Mr. Cox gets out of the car and runs down the street, eventually, I mean, for all we know, the cab driver's looking to get his fare or is worried that this pack of criminal... That he'd be trying to save him from the others to get his fare as opposed to jumping in and beating him up a little bit more. The other case is the one about concurrent causes. When there's two causes, one of which would be auto-related and arise out of use of the auto, there's coverage. And in this case, one might argue that there was negligent entrustment, which arises out of use of auto, and battery, assault and battery, which doesn't arise out of use. I say there's coverage as long as one is auto-related. Thank you, Your Honor. May it please the Court. Counsel, two points I'd like to make. First, we believe there's no genuine dispute that the cab driver, Kingsley, participated in the crime. What do you rely on for that? Mr. Cox's unrebutted testimony, the cab driver got out of the cab and, together with the man in the ski mask and the two other men, beat him and robbed him in the alley. Then they all got back into their respective cars and drove away. I'm sorry, you said that's point number one? Yes, sir. Where the insured driver perpetrates an assault against his passenger, the connection to the use of an auto as an auto is too remote, attenuated or incidental to support a finding of coverage under the auto liability policy. What's your best case for that? I've got three cases on point. None of them involved a negligent entrustment issue? He's incorrect. One of the three, State Farm v. File, specifically alleged negligent entrustment against the parents of a 17-year-old boy. The cause of action for negligent entrustment was the case that was decided in the Chancery Court and affirmed on appeal. What happened in that case, the parents were alleged to have negligently entrusted their car to the 17-year-old boy who, quote, used their car to entrap his victim and commit his crime. The court in State Farm v. File found that that use is not consistent with the inherent nature of an auto as an auto. He used the car as a weapon. And when a perpetrator uses the car as a weapon, he is outside the risks inherent in an auto liability policy. Let me ask you this question, because you described the incident and you made clear that Mr. Kingsley was involved, but you talked about it in terms of Mr. Kingsley  being inside the car. Now, would it have made any difference had all that occurred inside the car, inside the cab? I don't think it does. In fact, if you look at USF&G v. Jiffy, the argument erupted inside the cab, but the passengers got out and were leaving. And the cab driver chased them down and proceeded to stab them outside the cab. And that very issue came up in that case. Does it make a difference if the altercation is inside the cab or outside the cab? And the court said no, because it's the altercation that makes a difference. When he pulls out a weapon and stabs his passenger, he's not using the auto as an auto. So when you use that phrase, use of an auto, really the focus is on use as opposed to auto. Because obviously an auto is involved, but it's whether or not the use was what would have been anticipated under the insurance policy. Correct, Your Honor. And I think Jiffy Cab points out that automobiles are used in many crimes. The court even said this. Bank robberies, for example. You probably couldn't have many bank robberies without an auto to effect the escape. That doesn't mean that the bank robbery is covered under the auto liability policy. Let me ask you this. Why isn't Mr. Kingsley simply not an insured to resolve the issue? That's simpler and more direct. I think Kingsley, like, well, I think they are insured. They're just outside. The conduct takes them outside. Now, when we talk about, there's a whole other, as I pointed out in my brief, I had other counts that alleged that Mr. Williams is not an insured. Mr. Williams wasn't actually using the car. So there are other counts, and I don't think Mr. Williams is an insured. Well, but if Mr. Williams is not an insured, then Mr. Kingsley cannot be an insured, right? We really didn't get to that. Those were the other counts that weren't decided. But the count that was decided was that when we have criminal conduct, it's outside the risks that are covered by the auto liability policy. So what kind of findings do we need for a finding of criminal conduct? And that would be on the part of Mr. Kingsley. What do we have in this case and whether or not what we have in this case satisfies that showing. I think to sustain the summary judgment, I think this court has to find that there's no genuine dispute that Kingsley participated in the crime. And I think that starts with he got out of the cab and beat him. And I think all of the other facts are consistent with that unrebutted testimony. But there was no default judgment entered against Mr. Kingsley on the negligent entrustment? I think in the underlying suit, if Mr. Kingsley was a defendant in the early going, he was not at the end of the case. And who's to say that Mr. Kingsley is ever going to reappear in this case? It's doubtful. Any other questions? Thank you very much, Your Honor. I do represent the cab companies in the case. The only one that's really involved at this point is Hale Hacking, which is the medallion licensee who leased the cab to Mr. Williams. We've said what we've said in the briefs, and nobody's really brought up our role today. I don't know if there's any questions on that point, but I think our position is pretty clear, is that Hale Hacking, the medallion licensee, complied with the statute that required them to go out and get the American country policy, which is what they procured it for. And it would be remarkable indeed if the city of Chicago required coverage beyond what an insurance policy already provides. It would be remarkable for not only the insurers that provide those policies, but also for all the medallion holders as well. It would be a significant departure from the law as everybody has taken it to be. The only other thing that we'd say is if this court were to make that kind of finding, assuming they did, that in this case, where you had Mr. Williams, who unauthorized against the city rules, he did everything wrong in terms of subleasing this cab, to Kingsley, let's say. And in this case, for him to argue that Hale Hacking somehow breached a contract to him in the face of what he did and created risks that Hale Hacking was in absolutely no position to control, I think is really beyond. So that would be our secondary position, which I think is actually as strong as the first position. So if there's no questions, I'll take a seat as well. Thank you. I'm given to understand that this practice with cab drivers goes on all the time, right? But that's either the case of file, it is not negligent entrustment of an automobile. If you read the first page of the decision, the complaint is negligent entrustment of a hunting knife and an automobile. And there is not a single fact, factual allegation to support the negligent entrustment of the auto. It was just thrown in there for the purpose of trying to get coverage, and it wasn't even discussed by the court. It was all about the hunting knife throwing rocks over the bridge. But the principle, the principle articulated by counsel for ACI, you don't question that, do you? Well, I do. Again, once again, in my view, let's just be clear on what that principle is first. And my understanding is that that principle is that once you engage in criminal conduct, that takes that conduct outside the use of an auto coverage. Mr. Williams didn't engage in criminal conduct. My client is Mr. Williams. But Mr. Williams can't be shielded by the person that actually did engage in conduct when he himself put that person in position to engage in criminal conduct. He didn't have any... Well, but Mr. Williams... He put him in position. Here's the irony or the contradiction here. Yes. What you're saying is Mr. Williams should be indemnified by the insurance company because Mr. Williams gave the car to Mr. Kingsley, and Mr. Kingsley robbed and beat up this Mr. Cox, but because he started the ball rolling, Mr. Williams, Mr. Williams should be absolved of the charge. He should be absolved of everything Mr. Kingsley did, and therefore he's entitled to indemnification. And that seems a bit strange. I think I'm saying that he was allegedly negligent in entrusting the automobile that arose out of the use of an auto. But let's say Mr. Williams... Hold on. Let's say Mr. Williams was the one who was driving the cab at the time, and Mr. Williams engaged in the criminal conduct... No coverage. Right. And so why should there be coverage if the person Mr. Williams gave the keys to engages in that very same criminal conduct? He's like his... He's in his shoes, his surrogate, his agent. There's two causes of action. One is related to the use of the auto. But in the other example, there are two. In file, in Jiffy Cab, there's nothing that's auto-related. It doesn't arise out of the use of the auto. In this case, it does, because of the two causes. Thank you. You guys gave us a very interesting case. We'll take it under advisement.